UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SAMANTHA PIKE and NATASHA IRVING <br><br>      Plaintiffs <br><br> v. <br><br> CHARLES F. BUDD, JR., in his individual capacity, <br><br>      Defendant | ) ) ) ) ) ) ) ) Civil Action No. 1:22-cv-00360-LEW ) ) ) ) ) ) |

## MOTION

Defendant Charles F. Budd, Jr. moves this Court, pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiffs' single count First Amended Complain (ECF Doc. 4) (the "FAC"). The reason for this motion, as set forth more fully in the incorporated memorandum of law, is that the FAC fails to state a claim upon which relief may be granted and it should therefore be dismissed.

## INCORPORATED MEMORANDUM OF LAW

### INTRODUCTION

In this case, the Plaintiffs allege that Budd made some overly familiar comments to them when they were at a conference in Nashville. To be sure, if Budd did what he is alleged to have done (the allegations are disputed), thereby making one or both of the Plaintiffs feel uncomfortable, that was inappropriate. But making female colleagues feel uncomfortable at a conference, although unprofessional, is simply not something that is covered by the equal protection clause of the Constitution of the United States, which, like Title VII, was never

1

intended to be a "general civility code." *see also Bodman v. Maine, Dept. of Health and Human Services,* 787 F. Supp. 2d 89, 100 (D. Me. 2011).  Plaintiffs' efforts to construct a claim of constitutional proportion out of conduct that does not rise to the level of actionable sexual harassment should be rejected.  The FAC should therefore be dismissed.

## STATEMENT OF FACTS

The FAC alleges the following facts which must be taken as true for the purposes of this motion.   Plaintiff Samantha Pike is a licensed alcohol and drug counselor who, at all times relevant hereto was employed by Wellspring, Inc.   FAC ¶¶ 5, 13. In her position with Wellspring, Pike worked as a counselor for the Maine Treatment and Recovery Courts (referred to in the FAC and herein as "treatment court"), a specialty docket of the Maine District Court. FAC ¶¶ 14, 15.  Treatment court is a voluntary program that involves a multidisciplinary treatment team including a judge, a prosecutor and defense attorney, as well as probation officers, cases managers, treatment providers, law enforcement officers and a coordinator.  FAC ¶¶ 12-14.  Budd was the judge assigned to the treatment court in Penobscot County during times relevant to this action.  FAC ¶  2.

From July 25 through July 28, 2022, Pike and other members of the treatment court team including Budd attended the National Associate of Drug Court Professionals Conference in Nashville, Tennessee.  FAC ¶ 25.  Pike and Budd stayed in the same hotel, while others in their group stayed in a different hotel.  FAC ¶ 33.   Pike's claims against Budd are based almost entirely on the following interactions she alleges that she had with Defendant during a span of two days at the conference:

<u>July 25</u>

- He said hello to her on the morning before the conference began.  FAC ¶ 27.

- He chatted with her a few times throughout the evening after the first day of the conference when they were both at a rooftop bar. FAC ¶ 29.
- He offered to share an Uber of Lyft with her back to the hotel at the end of the evening. FAC ¶ 34.
- After claiming, mistakenly, that his room was across the hall from hers, he rode the elevator up to her room at the hotel and said he would not go in unless invited. FAC ¶ 38.
- He told her he thought she was pretty. FAC ¶ 36.
- He invited her to go back to the lobby and have a drink and offered to get the drinks when she said she did not have her wallet. FAC ¶¶ 38, 39.
- While at the bar having a drink, he told her that his marriage was rocky, that his text messages were deleted, and that he found two clients in treatment court attractive. FAC ¶¶ 46, 47, 49.
- Also during this 30 minute conversation he encouraged her to talk about herself. 4 FAC ¶ 9.
- And at the end of the conversation, he told her he knew where his room was while allegedly smirking. FAC ¶ 50

July 26

- He asked her if she wanted to share a ride downtown to meet people for dinner. FAC ¶56.
- He followed her around at dinner and tried to make conversation with her. FAC ¶61, 62.
- He said she was prettier than the bartender. FAC ¶ 61.

3

- When she left the bar without him he accused her of ditching him and said he wouldn't give her any more donuts. FAC ¶ 70.

In addition to these allegations of what occurred during two evenings in Nashville, the FAC includes two allegations of post-conference conduct. First, Pike alleges that Budd did not bring Boston Cream donuts to court on the first day it was held after the conference. Second, Pike alleges that on the same day he failed to bring donuts, Budd asked Pike to speak with him in chambers where he told her that he was going to be making changes at home and said she was a very good listener. FAC ¶ ¶ 82, 84, 86.

With respect to Plaintiff Natasha Irving, the FAC alleges only that she and Budd have had a single interaction also at the conference in which he asked her what hotel she was staying at and when she said she was at a different hotel, he said "well, you can come sleep with me in my room." FAC ¶ ¶ 99, 101, 102

**ARGUMENT**

I. <u>Standard of Review</u>

"To survive a motion to dismiss for failure to state a claim under Rule 12(b) (6), the plaintiff must set forth facts sufficient to state a legal claim on which relief could be granted." *Giragosian v. Bettencourt*, 614 F.3d 25, 28-29 (1st Cir. 2010). The court conducts a two-step analysis test to evaluate the sufficiency of a complaint. *See Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. 2016). First, the court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Id.* (quotation marks omitted) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). Second, "the court must determine whether the well-pleaded facts, taken in their entirety, permit

'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Morales-Cruz*, 676 F.3d at 224). "This plausibility standard is 'not akin to a "probability requirement"' but it 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 70 (1st Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "'If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,' dismissal is proper." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)). In evaluating the sufficiency of the complaint, the Court "need not credit a plaintiff's '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

II.     The Elements of Plaintiffs' Claims.

The FAC contains a single count pursuant to which both Plaintiffs claim that by engaging in the conduct outlined above, Defendant violated their constitutionally protected equal protection rights and are liable to them under 42 U.S.C. § 1983. "Section 1983 'affords a private right of action in favor of persons whose federally assured rights are abridged by state actors.'" *Parker v. Landry*, 935 F.3d 9, 14 (1st Cir. 2019) (quoting *Kando v. R.I. State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018)). As a general matter, to prevail on a claim brought under § 1983, "a plaintiff must show that 'the challenged conduct [is] attributable to a person acting under color of state law' and that 'the conduct . . . worked a denial of rights secured by the Constitution or by federal law.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 37 (1st Cir. 2013) (quoting *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997).

The standard required for making out a Section 1983 claim for violation of the equal protection clause has been defined by the First Circuit as follows.

5

> To make out a prima facie case of quid pro quo harassment, under either the equal protection clause or Title IX, the plaintiff must show that (1) he or she was subject to unwelcome sexual advances by a supervisor or teacher and (2) that his or her reaction to these advances affected tangible aspects of his or her compensation, terms, conditions, or privileges of employment or educational training. *See Henson,* 682 F.2d at 909. In rebuttal, the defendant may show that the behavior complained of either did not take place or that it did not affect a tangible aspect of the plaintiff's employment or education. To make out a prima facie case of hostile environment harassment, the plaintiff must show that he or she was subjected to unwelcome sexual advances so "severe or pervasive" that it altered his or her working or educational environment. *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2406. And in response, the defendant may show that the events did not take place or that they were isolated or genuinely trivial. *See Katz v. Dole,* 709 F.2d 251, 256 (4th Cir.1983).

*Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 898 (1st Cir. 1988) *see also White v. Vathally*, 732 F.2d 1037, 1039 (1st Cir. 1984) ("the analytical framework for proving discriminatory treatment [under Title VII] . . . is equally applicable to constitutional and Title VII claims."); *Rivera-Freytes v. Puerto Rico*, 894 F. Supp. 2d 159, 169-70 (D. P.R. 2012) ("[T]he analytical framework for proving discriminatory treatment pursuant to Title VII claims is equally applicable to the Equal Protection Clause."). Under Title VII, harassment is "severe or pervasive" if the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 78, 1 (1998).

III. <u>Plaintiffs Has Failed to Plausibly Plead a Section 1983 Claim</u>

    A. The FAC does not plausibly plead that Budd acted under color of state law.

It is well recognized that not everything a governmental actor does is under color of state law. Rather, as the First Circuit explained in *Martinez v. Colon*, 54 F.3d 980, 987 (1st Cir. 1995):

> Even though "acting under color of law" includes "acting under pretense of law" for purposes of a state action analysis, there can be no pretense if the challenged conduct

6

>is not related in some meaningful way either to the officer's governmental status or to the performance of his duties.

Id at 987. Accordingly "acts of officers in the ambit of their personal pursuits are plainly excluded." *Screws v. United States*, 325 U.S. 91, 111 (1945).

With respect to claims brought under the equal protection clause for sexual harassment, the First Circuit has only held that that on-the-job sexual harassment claims are within the purview of section 1983." *Pontarelli v. Stone*, 930 F.2d 104, 113-14 (1st Cir. 1991) (emphasis supplied); *see also David v. City and County of Denver,* 101 F.3d 1344, 1354 (10th Cir.1996) (determining that female officer could potentially recover for sexual harassment allegations, asserted under section 1983, if she showed that her fellow officers had supervisory authority over her or exercised state authority over her). Those cases, however, do not apply to this case because here, there is no allegation that the allegedly wrongful acts committed by Budd were committed in the course of his performance of his obligations as a judge. To the contrary, Plaintiff specifically pleads that the conduct was not a judicial act and was "taken in the clear absence of all jurisdiction," FAC ¶ 112. The FAC goes on to allege that the conduct occurred not at the courthouse or in the context of any work-related obligations but rather when Budd and the two Plaintiffs were out socializing after a day at a conference. Furthermore, there is no allegation that Budd was in a supervisory employment relationship with either Plaintiff or was even employed by the same entity. Indeed, with respect to Irving, the allegations in the FAC suggest that Budd had no relationship with her aside from the single conversation alleged in the FAC.

In the end, other than the fact that he was employed as a judge during the time period relevant to this action, the FAC is devoid of any allegation that Budd acted under color of state

7

law when he engaged in the conduct complained of. His Section 1983 claim should therefore be dismissed.

> B.  Plaintiffs have not plausibly pled that they were subjected to actionable sexual harassment by Defendant

Budd is also entitled to dismissal of the FAC because it fails to plausibly plead that either Plaintiff was subjected to actionable sexual harassment. As the First Circuit made clear, claims for sexual harassment under the equal protection clause are analyzed under the same standard that claims for sexual harassment under Title VII are. *Lipsett*, 864 F.2d at 898; *White v. Vathally*, 732 F.2d 1037, 1039 (1st Cir. 1984). The FAC fails to include sufficient factual allegations to support such a claim.

First, although the FAC alleges broadly that Pike was subjected to quid pro quo harassment, this is nothing more than the type of "threadbare" allegation the United States Supreme Court has held is insufficient to avoid a motion to dismiss to support this claim. *Iqbal*, 556 U.S. at 678. Quid pro quo harassment occurs "when some benefit or adverse action, such as change in salary at work or a grade in school, is made to depend on providing sexual favors to someone in authority." *Wills v. Brown Univ.*, 184 F.3d 20, 25 (1st Cir. 1999); *see also Lipsett*, 864 F.2d at 898. Here, with the possible exception of the allegation that Budd failed to bring donuts to court following the conference, there is no allegation of a withholding or a threat to withhold benefits. Indeed, as the allegations in the FAC establish, Budd had no authority to affect Pike's employment since she was employed by an outside agency not controlled by the courts. Even with respect to the donuts, there is no allegation—nor could there be – that Boston Cream donuts were a benefit of Pike's job with Wellspring. Accordingly, no actionable quid pro quo harassment has been pled.

Second, Plaintiffs' hostile environment harassment claims fairs no better because there is nothing that plausibly alleges either Plaintiff was subjected to harassment that was severe or pervasive.  The question whether the environment is objectively "hostile or abusive" must be answered by reference to "all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys. Inc.,* , 510 U.S. 71, 23 *(*1993).  " [A]n isolated sexual advance, without more, does not satisfy the requirement that an employee asserting a cause of action for hostile environment discrimination demonstrate an abusive workplace environment." *Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 783 (1st Cir. 1990).  Thus, for example, in *Ponte v. Steelcase Inc.,* 741 F.3d 310 (1st Cir. 2014), a new female employee whose supervisor, on two occasions, insisted that he drive her home after work, then put his arm around her shoulder during the ride and left his hand there while emphasizing that she owed him her job, claimed that she had been subjected to a hostile environment as a result.  The First Circuit disagreed.  It began its analysis of this claim stating that the plaintiff's discomfort with her supervisor's behavior was reasonable. *Id.* at 20.  However, it went on, "discomfort is not the test"  and concluded that "[o]n the scale of what has been recognized as egregious conduct rising to the required level, this was not close." *Id.* at 320.

In this case, the conduct Plaintiffs allege Budd engaged in, which included no physical conduct at all and involved limited interactions between Plaintiffs and Budd that was completely unrelated to their jobs, is even lower on the scale of egregious conduct:  Irving alleges that Budd made a single comment to her that was, at most, vaguely sexual, in an open space, in the presence of others.  Pike alleges, in essence, that Budd was overly attentive to her when they

interacted during two evenings after the conference. She does not, however, allege that he touched her, that he pressured her for sexual favors, or made sexually explicit comments. Nor does she allege that the rather mild conduct she claims he engaged in happened with any regularity, much less that it was pervasive. In short, there is no allegations of conduct that might transform a workplace into a hostile environment. The FAC should therefore be dismissed.

IV.     Budd is Entitled to Qualified Immunity

Finally, even if this Court were to find that Plaintiffs had have adequately pled claims for violation of their constitutional rights, Budd is protected by the doctrine of qualified immunity and the FAC should still be dismissed. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A constitutional right is clearly established if "every reasonable official would have understood that what he is doing violates that right" at the time of his conduct." *Taylor v. Barkes*, 575 U.S. 822, 135 (2015).

There is no clear First Circuit case law regarding the extent to which sexual harassment violates equal protection outside the employment and school contexts so there was no clearly established right here and Budd is entitled to qualified immunity. In *Sampson v. Cnty. Of Los Angeles*, 974 F.3d 1012, 1023 (9th Cir. 2020) the Ninth Circuit held that there is a "right to be free from sexual harassment at the hands of public officials providing social services," it reluctantly agreed that such a right was not clearly established in its case law. Heeding the Supreme Court's admonition that courts cannot "define clearly established law at a high level of generality," the Ninth Circuit admitted that it could not find a case with "sufficiently similar

facts" such that the court-appointed guardian's right to be free from sexual harassment from the state social worker was clearly established. *Id*. at 1024.

There is no case in this Circuit, nor, to the undersigned counsel's knowledge, any other Circuit, holding that a judge could be liable to someone he works with in the judicial system for making a handful of comments that made her uncomfortable after hours while the two were attending a conference. Budd is therefore entitled to qualified immunity as a matter of law.

## CONCLUSION

For all of the foregoing reasons, this Court should dismiss Plaintiffs' First Amended Complaint with prejudice for failure to state a claim.

Dated: December 23, 2022  /s/ Melissa A. Hewey
Melissa A. Hewey
Attorney for Defendant Charles F. Budd, Jr.

Drummond Woodsum
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
Tel: (207) 772-1941
Fax: (207) 772-3672
mhewey@dwmlaw.com